

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ,** | §§§§§ |
| Plaintiff, | §§ |
| v. | §§ **EP22CV0008** |
| **VERCY, L.L.C.,** a California Limited Liability Company and **NADER SEPEHR** | §§§§§ |
| Defendants. | §§§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant VERCY, L.L.C. ("Vercy") is a Limited Liability Company organized and existing under the laws of California and can be served via registered agent Nader Sepehr at 17748 Sky Park Circle #200 Irvine, California 92614.

3. Defendant Nader Sepehr ("Sepehr") is a natural person, resident of California, and Manager of Vercy and can be served at 66 Palatine Drive, Apt 333 Irvine, California 92612.

4. Defendant Vercy principals place of business is 17748 Sky Park Circle #200 Irvine, California 92614.

5. Defendants Vercy and Sepehr (together "Defendants")

## NATURE OF ACTION

6. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

7. Defendants offer tax debt relief services to consumers. As part of marketing their services, Defendant Vercy and their agents placed illegal robocalls to Plaintiff's cell phone that used an automated telephone dialing system ("ATDS") and a prerecorded voice advertisement.

8. Defendant Vercy make unsolicited and unauthorized phone calls to thousands of consumers using artificial or prerecorded voice messages to sell their services.

9. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

10. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant Vercy's use of technological equipment to spam consumers on a grand scale without their consent.

12. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

13. Plaintiff therefore seeks an injunction requiring Defendant Vercy to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

14. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

15. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

16. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

18. Plaintiff's personal cell phone (915) 490-0898 is on the National-Do-Not-Call-Registry.

19. Defendant Vercy offers tax debt relief services to consumers who owe back taxes to the IRS.

20. Defendant Sepehr is the manager of Vercy and controls and dominates Vercy.

21. Defendant Sepehr approves of the contracts with the telemarketers who make illegal robocalls with artificial or prerecorded voice messages to thousands of consumers cellular and residential phone numbers using an ATDS.

22. Defendant Sepehr authorizes the payments to the telemarketers.

23. Defendant Sepehr pays the John Doe telemarketers out of bank accounts owned and controlled by Sepehr.

24. Defendant Sepehr provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

25. Defendant Vercy has been sued before for TCPA violations (case # 8:21-cv-00531-DOC-JDE) and Defendant Sepehr continues to knowingly and willfully authorize unknown John Doe telemarketers to place illegal robocalls (like the calls alleged in this complaint) to thousands of consumers en mass by using an ATDS.

26. Defendant Sepehr has full control over Vercy and has the authority to stop the illegal robocalls however has refused to do so because it benefits defendants financially.

27. Defendant Sepehr approves of the scripts when calling consumers (like the ones alleged in this complaint) with the prerecorded messages that say "Thank you for connecting, I'm the virtual assistant for Margaret Smith from central processing center for federal back tax negotiations. The purpose of her call was to make you aware that the government suspended the tax collection act and will settle all old tax debts that us residents may have. This means you are not going to need to pay back your past due taxes since they are

non-collectible and ready to be settled. Using our automated approval technology you are now able to obtain enrollment information based on your current situation. To use our A automation and find the program you are approved for you will need to write down the website. I will also deliver a text message that will provide a link with the program benefits. Would you like to hear the website and receive a text message? Great and to confirm, you would like to find out more about the IRS settlement program and you think you do owe more than ten thousand dollars in back taxes is this correct? Okay, these programs have been developed to help stimulate the economy but they do have some certain requirements to be eligible you cannot currently be in any other tax debt consolidation or settlement program, you cannot currently be in bankruptcy, and you must have a household income of under two hundred and fifty thousand dollars a year but you do have to have a monthly income of at least two thousand dollars a month so I need to ask you do you meet these minimum requirements for eligibility? Okay please hold a moment while I retrieve the information."

28. On September 8, 2021 Plaintiff received the first of multiple unauthorized phone calls made to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (682) 404-5036.

29. Plaintiff answered the call and heard an artificial or prerecorded voice message saying, "before I transfer you to your assigned counselor let me confirm some information do you believe you still owe more than ten thousand dollars in federal back taxes?"

30. Plaintiff responded to the prompts and was then transferred to a live representative then the call was dropped.

31. On October 11, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (430) 260-0493.

32. Plaintiff answered the call and heard an artificial or prerecorded voice message saying, "before I transfer you to your assigned counselor let me confirm some information do you believe you still owe more than ten thousand dollars in federal back taxes?"

33. Plaintiff responded to the prompts and was then transferred to a live representative from Defendant Vercy named Jocelyn.

34. Jocelyn advised Plaintiff Vercy is a "tax debt relief support that assist people with tax debt" and solicited Plaintiff for Vercy services.

35. Plaintiff advised Jocelyn he owed back taxes to the IRS for the sole purposes of identifying who was responsible for making the illegal robocalls to his personal cell phone.

36. Jocelyn advised Plaintiff that Vercy works in a two phase process starting with a tax investigation phase that cost $595 and then the resolution phase that cost no more than 25% of the tax debt owed.

37. Jocelyn asked Plaintiff for his personal information name, address, employment etc.

38. Plaintiff received an email from Jocelyn that contained a contract with Defendant Vercy's information and revealed the company responsible for the illegal robocalls made to his personal cell phone.

39. Plaintiff never gave his express written consent to receive phone calls from Defendant Vercy and had no relationship with Defendant Vercy prior to this interaction.

40. On October 12, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Jocelyn from phone number (949) 471-0362 to follow up with Plaintiff.

41. Plaintiff advised Jocelyn that he was not interested in Vercy's services anymore.

42. On October 18, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Jocelyn from phone number (949) 471-0362 to follow up with Plaintiff.

43. Jocelyn advised Plaintiff that all he needed to do was sign the documents. Plaintiff advised Jocelyn that he advised her in the last call if he was interested in Vercy's services anymore.

44. Plaintiff never gave his express consent to receive follow up calls from Jocelyn or any other representative from Defendant Vercy.

45. On December 21, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (430) 540-0213.

46. Plaintiff answered the call and heard an artificial or prerecorded voice message that said "Thank you for connecting, this message is from Margaret Smith with central processing center for federal back tax negotiations."

47. Plaintiff responded to the prompts and was then transferred to a live representative from Defendant Vercy named Michael.

48. Michael asked Plaintiff if he owed any federal back taxes and solicitated Plaintiff for Vercy services.

49. Michael advised Plaintiff that they work in a two-phase process and explained how they can help reduce back tax debt.

50. Plaintiff advised Michael he owed back taxes to the IRS for the sole purposes of identifying who was responsible for making the illegal robocalls to his personal cell phone.

51. Michael sent a text and email to Plaintiff with his information and stated he was calling on behalf of "Vercy Tax."

52. Plaintiff received and email from Michael with his information confirming he was another representative from Vercy.

53. On December 27, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Michael from phone number (949) 471-0351 to follow up with Plaintiff.

54. Plaintiff advised Michael that he was in a meeting and would call Michael back.

55. The follow up calls from Jocelyn and Michael made to Plaintiff's personal cell phone (915) 490-0898 are not in any way, shape, or form considered "business relationship" without Plaintiff giving his express consent to receive follow up calls.

56. On December 29, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (254) 720-0291.

57. Plaintiff answered the call and heard an artificial or prerecorded voice message that said "Thank you for connecting, this message is from Margaret Smith with central processing center for federal back tax negotiations."

58. Plaintiff responded to the prompts and was then transferred to a live representative from Defendant Vercy named Cas.

59. Plaintiff advised Cas that he heard a recording about owing back taxes to the IRS. Cas acknowledged the recording and stated "right, so we don't know if you owe anything that's something that you would have to tell us cause we're a tax relief firm so we help people that owe the IRS money."

60. Plaintiff advised Cas that he spoke to someone from their agency already and Cas advised plaintiff that it was Jocelyn.

61. Plaintiff asked Cas if this was Vercy Tax and Cas confirmed that it was.

62. Cas advised Plaintiff Jocelyn was unavailable and would email Plaintiff his contact information.

63. Defendants purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local.

64. Table A displays the calls made by the defendants

| Date | Time | Caller ID |
| --- | --- | --- |
| 9/8/2021 | 10:17AM | 682-404-5036 |
| 10/11/2021 | 5:00PM | 430-260-0493 |
| 10/12/2021 | 9:13AM | 949-471-0362 |
| 10/18/2021 | 5:09PM | 949-471-0362 |
| 12/21/2021 | 1:52PM | 430-540-0213 |
| 12/27/2021 | 2:15PM | 949-471-0351 |
| 12/29/2021 | 1:39PM | 254-720-0291 |

65.

66. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

67. The unauthorized phone calls made from or on behalf of Defendant Vercy to Plaintiff's personal cell phone (915) 490-0898 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

68. The unauthorized phone calls made from or on behalf of Defendant Vercy to Plaintiff's personal cell phone (915) 490-0898 generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS.

69. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff

is a Texas resident.

70. The Defendants never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to info@vercytax.com.

71. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

72. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

73. Defendant Sepehr participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

74. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

75. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

76. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

**The Texas Business and Commerce Code 305.053**

77. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

78. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

79. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

80. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

81. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

82. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

83. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

84. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

85. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

## **FIRST CAUSE OF ACTION**

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

86. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

88. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

89. Defendants' calls were made for purposes of advertising and marketing Defendants' tax debt relief services. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

90. The calls were made using an artificial or prerecorded voice message to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

91. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B),

entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

92. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

93. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

94. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

95. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [1];

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [2]; and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

---

[1] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order

96. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

97. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

98. Plaintiff incorporates the foregoing allegations as if set forth herein.

99. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

100. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

101. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FOURTH CAUSE OF ACTION
### (Violations of The Texas Business and Commerce Code 302.101)

102. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

103. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101,** by

making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

104. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for seven calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H. An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I.	Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 3, 2021					Respectfully Submitted,

						Erik Salaiz
						Plaintiff, Pro Se
						319 Valley Fair Way
						El Paso, Texas 79907
						915-490-0898
						Salaiz.ep@gmail.com