

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **ERIK SALAIZ,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **VERCY, L.L.C.,** a California Limited Liability | § | **EP-22-CV-0008-KC** |
| Company and **NADER SEPEHR** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES PLAINTIFF ERIK SALAIZ with his First Amended Complaint herein and alleges and states as follows:

### PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant VERCY, L.L.C. ("Vercy") is a Limited Liability Company organized and existing under the laws of California with a principle address of 17748 Sky Park Circle Suite 200 Irvine, California 92614 and can be served via registered agent Nader Sepehr at 4533 Macarthur Boulevard, Suite 216 Newport Beach, CA 92660.

3. Defendant Nader Sepehr ("Sepehr") is a natural person, resident of California, Manager and Principal of Vercy and can be served at 66 Palatine Drive, Apt 333 Irvine, California 92612 or 4533 Macarthur Boulevard, Suite 216 Newport Beach, CA 92660.

4. Defendants Vercy and Sepehr (together "Defendants")

## NATURE OF ACTION

5. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

6. Defendants offer tax debt relief services to consumers. As part of marketing their services, Defendant Vercy and their agents placed illegal robocalls to Plaintiff's cell phone that used an automated telephone dialing system ("ATDS") and a prerecorded voice advertisement.

7. Defendant Vercy makes unsolicited and unauthorized phone calls to thousands of consumers using artificial or prerecorded voice messages to sell their services.

8. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

9. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant Vercy's use of technological equipment to spam consumers on a grand scale without their consent.

10. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

11. Plaintiff therefore seeks an injunction requiring Defendant Vercy to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

12. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

21. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on

behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## JURISDICTION AND VENUE

25. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

26. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

27. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

28. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

29. Plaintiff's personal cell phone (915) 490-0898 is on the National-Do-Not-Call-Registry.

30. Defendant Vercy offers tax debt relief services to consumers who owe back taxes to the IRS.

31. Defendant Sepehr is the manager and principal of Vercy and controls and dominates Vercy.

32. Defendant Sepehr approves of the contracts with the telemarketers who make illegal robocalls with artificial or prerecorded voice messages to thousands of consumers cellular and residential phone numbers using an ATDS.

33. Defendant Sepehr authorizes the payments to the telemarketers.

34. Defendant Sepehr pays the John Doe telemarketers out of bank accounts owned and controlled by Sepehr.

35. Defendant Sepehr provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

36. Defendant Vercy has been sued before for TCPA violations (case # 8:21-cv-00531-DOC-JDE) and Defendant Sepehr continues to knowingly and willfully authorize unknown John Doe telemarketers to place illegal robocalls (like the calls alleged in this complaint) to thousands of consumers en mass by using an ATDS.

37. Defendant Sepehr has full control over Vercy and has the authority to stop the illegal robocalls however has refused to do so because it benefits defendants financially.

38. Defendant Sepehr approves of the scripts when calling consumers (like the ones alleged in this complaint) with the prerecorded messages that say

"Thank you for connecting, I'm the virtual assistant for Margaret Smith from central processing center for federal back tax negotiations. The purpose of her call was to make you aware that the government suspended the tax collection act and will settle all old tax debts that us residents may have. This means you are not going to need to pay back your past due taxes since they are non-collectible and ready to be settled. Using our automated approval technology you are now able to obtain enrollment information based on your current situation. To use our A automation and find the program you are approved for you will need to write down the website. I will also deliver a text message that will provide a link with the program benefits. Would you like to hear the website and receive a text message? Great and to confirm, you would like to find out more about the IRS settlement program and you think you do owe more than ten thousand dollars in back

taxes is this correct? Okay, these programs have been developed to help stimulate the economy but they do have some certain requirements to be eligible you cannot currently be in any other tax debt consolidation or settlement program, you cannot currently be in bankruptcy, and you must have a household income of under two hundred and fifty thousand dollars a year but you do have to have a monthly income of at least two thousand dollars a month so I need to ask you do you meet these minimum requirements for eligibility? Okay please hold a moment while I retrieve the information."

39. On September 8, 2021 Plaintiff received the first of multiple unauthorized phone calls made to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (682) 404-5036.

40. Plaintiff answered the call and heard an artificial or prerecorded voice message that stated "before I transfer you to your assigned counselor let me confirm some information do you believe you still owe more than ten thousand dollars in federal back taxes?"

41. Plaintiff responded to the prompts and was then transferred to a live representative from Vercy and the call was then dropped.

42. On October 11, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (430) 260-0493.

43. Plaintiff answered the call and heard an artificial or prerecorded voice message that stated "before I transfer you to your assigned counselor let me confirm some information do you believe you still owe more than ten thousand dollars in federal back taxes?"

44. Plaintiff responded to the prompts and was then transferred to a live representative from Defendant Vercy named Jocelyn.

45. Jocelyn advised Plaintiff Vercy is a "tax debt relief support that assist people with tax debt" and solicited Plaintiff for Vercy services.

46. Plaintiff advised Jocelyn he owed back taxes to the IRS for the sole purposes of identifying who was responsible for making the illegal robocalls to his personal cell phone.

47. Jocelyn advised Plaintiff that Vercy works in a two phase process starting with a tax investigation phase that cost $595 and then the resolution phase that cost no more than 25% of the tax debt owed.

48. Jocelyn asked Plaintiff for his personal information name, address, employment etc.

49. Plaintiff received an email from Jocelyn that contained a contract with Defendant Vercy's information and revealed the company responsible for the illegal robocalls made to his personal cell phone.

50. Plaintiff never gave his express written consent to receive phone calls from Defendant Vercy and had no relationship with Defendant Vercy prior to this interaction.

51. On October 12, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Jocelyn from phone number (949) 471-0362 to follow up with Plaintiff.

52. Plaintiff advised Jocelyn that he was not interested in Vercy's services anymore.

53. On October 18, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Jocelyn from phone number (949) 471-0362 to follow up with Plaintiff.

54. Jocelyn advised Plaintiff that all he needed to do was sign the documents. Plaintiff advised Jocelyn that he advised her in the last call if he was interested in Vercy's services anymore.

55. Plaintiff never gave his express consent to receive follow up calls from Jocelyn or any other representative from Defendant Vercy.

56. On December 21, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (430) 540-0213.

57. Plaintiff answered the call and heard an artificial or prerecorded voice message that stated "Thank you for connecting, this message is from Margaret Smith with central processing center for federal back tax negotiations."

58. Plaintiff responded to the prompts and was then transferred to a live representative from Defendant Vercy named Michael.

59. Michael asked Plaintiff if he owed any federal back taxes and solicitated Plaintiff for Vercy services.

60. Michael advised Plaintiff that they work in a two-phase process and explained how they can help reduce back tax debt.

61. Plaintiff advised Michael he owed back taxes to the IRS for the sole purposes of identifying who was responsible for making the illegal robocalls to his personal cell phone.

62. Michael sent a text and email to Plaintiff with his information and stated he was calling on behalf of "Vercy Tax."

63. Plaintiff received and email from Michael with his information confirming he was another representative from Vercy.

64. On December 27, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Michael from phone number (949) 471-0351 to follow up with Plaintiff.

65. Plaintiff advised Michael that he was in a meeting and would call Michael back.

66. The follow up calls from Jocelyn and Michael made to Plaintiff's personal cell phone (915) 490-0898 are not in any way, shape, or form considered "business relationship" without Plaintiff giving his express consent to receive follow up calls.

67. On December 29, 2021 Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (254) 720-0291.

68. Plaintiff answered the call and heard an artificial or prerecorded voice message that stated

"Thank you for connecting, this message is from Margaret Smith with central processing center for federal back tax negotiations."

69. Plaintiff responded to the prompts and was then transferred to a live representative from Defendant Vercy named Cas.

70. Plaintiff advised Cas that he heard a recording about owing back taxes to the IRS. Cas acknowledged the recording and stated "right, so we don't know if you owe anything that's something that you would have to tell us cause we're a tax relief firm so we help people that owe the IRS money."

71. Plaintiff advised Cas that he spoke to someone from their agency already and Cas advised plaintiff that it was Jocelyn.

72. Plaintiff asked Cas if this was Vercy Tax and Cas confirmed that it was.

73. Cas advised Plaintiff Jocelyn was unavailable and would email Plaintiff his contact information.

74. On January 7, 2022  Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (469) 596-5570.

75. Plaintiff answered the call and heard an artificial or prerecorded voice message that stated "Thank you for connecting, this message is from Margaret Smith with central processing center for federal back tax negotiations."

76. Plaintiff responded to the prompts and was then transferred to a live representative from Defendant Vercy named Alex Celis.

77. Alex advised Plainitiff they were calling him to see if they can help him with his tax debt and solicited Plaintiff for Vercy's services.

78. Plaintiff received an email from Alex confirming he was another representative from Vercy.

79. On January 10, 2022  Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (432) 336-0806.

80. Plaintiff answered the call and heard an artificial or prerecorded voice message that stated "Thank you for connecting, this message is from Margaret Smith with central processing center for federal back tax negotiations."

81. Plaintiff responded to the prompts and was then transferred to a live representative from Defendant Vercy named Addison Black.

82. Addison advised Plainitiff they were calling him to see if they can help him with his tax debt and solicitated Plaintiff for Vercy's services.

83. Plaintiff received an email from Addison confirming he was another representative from Vercy.

84. On January 11, 2022  Plaintiff received two calls to his personal cell phone (915) 490-0898 from Alex Celis from phone number (949) 404-4420 calling to follow up. Plaintiff advised Alex he would call him back if he needed their services.

85. On January 17, 2022  Plaintiff received a call to his personal cell phone (915) 490-0898 from Natalie from phone number (949) 390-9480 calling on behalf of Vercy to follow up. Plaintiff advised Natalie he would call them back if he needed their services.

86. On January 24, 2022  Plaintiff received a call to his personal cell phone (915) 490-0898 from Alma from phone number (949) 326-5023 calling on behalf of Vercy to follow up. Plaintiff advised Alma he would call them back if he needed their services.

87. The follow up calls from Alex, Natalie, Alma and other Vercy representatives made to Plaintiff's personal cell phone (915) 490-0898 are not in any way, shape, or form considered "business relationship" without Plaintiff giving his express consent to receive follow up calls.

88. On January 27, 2022  Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (346) 640-0348.

89. Plaintiff answered the call and heard an artificial or prerecorded voice message that stated

"Hello, just wanted to leave a quick message in regard to collections on back taxes please call back (866) 970-4120."

90. Plaintiff called back (866) 970-4120 for the sole purposes of identifying the company responsible for the illegal robocall. Plaintiff was greeted by a representative named Chris Kurisu.

91. Chris asked Plaintiff if he owed any back tax debt and solicited Plaintiff for Vercy services. Chris emailed Plaintiff his information confirming he was another representative from Vercy.

92. On January 31, 2022  Plaintiff received a call to his personal cell phone (915) 490-0898 from Defendant Vercy from phone number (737) 766-1277.

93. Plaintiff answered the call and heard an artificial or prerecorded voice message that stated

"Thank you for connecting, this message is from Margaret Smith with central processing center for federal back tax negotiations."

Confirming it was another call on behalf of Defendant Vercy.

94. Plaintiff received at least three calls from Defendants after Defendant Vercy got served with the original complaint on January 19, 2022. Defendants knowingly and willfully continued the illegal robocalls to Plaintiff's personal cell phone (915) 490-0898 authorized by Defendant Sepehr.

95. Defendants purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local.

96. Table A displays the calls made by the Defendants:

| Date | Time | Caller ID |
|---|---|---|
| 9/8/2021 | 10:17AM | 682-404-5036 |
| 10/11/2021 | 5:00PM | 430-260-0493 |
| 10/12/2021 | 9:13AM | 949-471-0362 |
| 10/18/2021 | 5:09PM | 949-471-0362 |
| 12/21/2021 | 1:52PM | 430-540-0213 |
| 12/27/2021 | 2:15PM | 949-471-0351 |
| 12/29/2021 | 1:39PM | 254-720-0291 |
| 1/7/2022 | 10:45AM | 469-596-5570 |
| 1/10/2022 | 5:33PM | 432-336-0806 |
| 1/11/2022 | 10:56AM | 949-404-4420 |
| 1/11/2022 | 3:40PM | 949-404-4420 |
| 1/17/2022 | 11:32AM | 949-390-9480 |

Table A:

97. Table B Displays calls made by Defendants after being served with original complaint on January 19, 2022.

| Date | Time | Caller ID |
|---|---|---|
| 1/24/2022 | 4:02PM | 949-326-5023 |
| 1/27/2022 | 1:28PM | 346-640-0348 |
| 1/31/2022 | 10:02AM | 737-766-1277 |

Table B:

98. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

99. The unauthorized phone calls made from or on behalf of Defendant Vercy to Plaintiff's personal cell phone (915) 490-0898 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

100.    The unauthorized phone calls made from or on behalf of Defendant Vercy to Plaintiff's personal cell phone (915) 490-0898 generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS.

101.    None of the Defendants registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants registrations.

102.    None of the Defendants qualify for an exemption under § 302.053.

103.    The Defendants never sent Mr. Salaiz any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to info@vercytax.com.

104.    On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

105.     On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

106.    Defendant Sepehr participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

107.    Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

108.    Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

109.    Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

## DEFENDANT SEPEHR IS PERSONALLY LIABLE

110.    Defendant Sepehr refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Sepehr financially.

111.    "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

112.    The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged

16

corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985)

(Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980))

(Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

113.    Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or
> personally authorized the conduct found to have violated the statute, and was not
> merely tangentially involved.  Individuals who directly (and here, knowingly and
> willfully) violate the TCPA should not escape liability solely because they are
> corporate officers.  As the State persuasive argues, to hold otherwise would allow the
> individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
> repeat their conduct.  Congress surely did not intend to permit such a result in passing
> the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
> "central figures" behind the TCPA violations.  They were the two persons who
> controlled all of Blastfax's day-to-day operations.  They both had direct, personal
> involvement in and ultimate control over every aspect of Blastfax's wrongful contuct
> that violate the TCPA, and/or directly controlled and authorized this conduct.  And
> they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg
> and Michael Horne had good reason to believe they were running a business that
> violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued
> to direct their company to send unsolicited intrastate fax advertisements.  This is fare
> more than a simple derivative liability case.  Accordingly, the Court *899 holds
> defendants Greg and Michael Horne are jointly and severally liable with Defendant
> Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax,
> Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

114.    The Same Court held that corporate officers were also personally liable for DTPA
violations

> The State contends Greg and Michael Horne are personally liable for any DTPA
> damages because they were solely responsible for the violating conduct.....For the
> same reasons discussed in finding the individual defendants personally liable under
> the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37
> (Tex. Civ. App.-Houston [1[ST] Dist.] 1985, no writ) (finding personal liability for
> corporate officer in DTPA misrepresentation claim, based on general rule that "a
> corporate agent knowingly participating in a tortious of fraudulent act may be held
> individually liable, even though he performed the act as an agent for the

17

corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

115.    At all times material to the Complaint, acting alone or in concert with others, Defendant Sepehr has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Vercy including the acts or practices set forth in this Complaint.

116.    Defendant Sepehr is the principal director and operator of Defendant Vercy controls the day-to-day operations of Vercy and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit back tax relief services on behalf of Vercy.

117.    Defendant Sepehr approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for Defendants financial benefit.

118.    Defendant Sepehr knowingly and willfully ignores the law. Defendants continue to solicit back tax relief services via automated messages with prerecorded voice messages. These violations are the direct result of the instructions Defendant Sepehr has given to their agents, employees, solicitors, salespersons, and others that carry out his schemes.

119.    Defendant Sepehr is not merely a bystander and is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

120.    Defendant Sepehr is well aware their conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Sepehr is the sole director of Vercy and the only person with the power to make the unlawful, fraudulent, and unethical behavior

stop.  Yet, Sepehr has taken no steps to stop the behavior because the behavior benefits

Sepehr financially.

121.        Defendants should be held jointly and severally liable for both the TCPA

violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually

committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively

oversaw and directed this conduct.

122.        Defendant Sepehr should be held liable because to do otherwise would simply

allow Sepehr to dissolve Vercy and set up a new corporation and repeat their conduct.

This would result in both the TCPA and DTPA being unenforceable.


### The Plaintiff's cell phone is a residential number

1.  The calls were to the Plaintiff's cellular phone (915) 490-0898  which is Plaintiff's

personal cell phone that he uses for personal, family, and household use. The Plaintiff

maintains no landline phones at his residence and has not done so for at least 10 years

and primarily relies on cellular phone to communicate with friends and family. The

Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails,

watching movies, listening to music and sending and receiving text messages. The

Plaintiff further has his cell phone registered in his personal name and pays the cell phone

from his personal accounts.


### The Texas Business and Commerce Code 305.053

2.  The Texas Business and Commerce code has an analogous portion that is related to the

TCPA and was violated in this case.

3. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

4. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

5. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

6. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

7. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

8. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

9.  Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

10. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

11. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

12. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

13. Plaintiff never consented to receive calls from Defendants.  Plaintiff has no relationship with Defendants.

14. Defendants' calls were made for purposes of advertising and marketing Defendants' tax debt relief services.  These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

15. The calls were made using an artificial or prerecorded voice message to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

16. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

17. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

18. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

19. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

20. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a.   written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b.   training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

   c.   in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

21. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

22. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

**THIRD CAUSE OF ACTION**
**Violations of The Texas Business and Commerce Code 305.053**

23. Plaintiff incorporates the foregoing allegations as if set forth herein.

24. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

25. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

26. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

**FOURTH CAUSE OF ACTION**

**(Violations of The Texas Business and Commerce Code 302.101)**

27. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

28. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

29. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for fifteen calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.      An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


February 7, 2022                    Respectfully Submitted,


Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com